# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **VOIP-PAL.COM, INC.** | § | |
| *Plaintiff,* | § | |
| | § | **Civil No. 6:21-cv-00668-ADA** |
| **v.** | § | |
| | § | |
| **AMAZON.COM, INC.,** | § | |
| **AMAZON.COM SERVICES LLC,** and | § | |
| **AMAZON WEB SERVICES, INC.** | § | |
| *Defendants.* | § | |

## [PUBLIC REDACTED] ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc., (collectively, "Amazon") filed their Motion to Transfer (the "Motion") on November 19, 2021. ECF No. 26. Plaintiff VoIP-Pal.com, Inc. ("VoIP") filed its Opposition to VoIP's Motion on March 15, 2022. ECF No. 40. Amazon filed its Reply on March 29, 2022. ECF No. 48. After careful consideration of the briefing, the Court **DENIES** Amazon's Motion.

## I.    FACTUAL BACKGROUND

Plaintiff VoIP is a Nevada corporation with its principal place of business in Waco, Texas. ECF No. 6 ¶ 1. Defendant Amazon is a Delaware corporation with its principal place of business in Seattle, Washington. *Id.* ¶¶ 2-4. VoIP filed a complaint against Amazon alleging infringement of U.S. Patent Nos. 8,630,234 (the "'234 patent") and 10,880,721 (the "'721 patent"; collectively, the "Asserted Patents") on June 28, 2021. *Id.* ¶¶ 11-12. The Asserted Patents describe systems, methods, and apparatuses for communication across and between internet-protocol based communication systems and other networks, such as internally controlled systems and external networks. *Id.* ¶ 26. The "Accused System" is a communications platform where Amazon server infrastructure enables communications by Amazon Alexa Calling Devices (e.g., desktop

computers, laptops, tablets, smartphones, and mobile devices) and Alexa software applications running on such devices (collectively, "Alexa devices"). *Id.* ¶ 28. Alexa devices, Echo devices, the Amazon Alexa app, and Fire tablets ("Amazon Products") communicate using the Accused System. *Id.* The Accused System enables communications between the Amazon Products, from the Amazon Products to mobile or landline phones, and group calling between Alexa devices. *Id.* ¶¶ 28-29.

The Accused System ████████████████████████████████████████ ████████████████████████████████████████████ ECF No. 40 at 4. A call takes different paths through the Accused System and interact with different servers depending on the caller and the receiver. Amazon engineers responsible for the Accused System are spread across Amazon locations in Sunnyvale, California; Seattle, Washington; Toronto, Ontario, Canada; and Austin, Texas. ECF No. 26 at 4. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ ECF No. 26-1 ¶ 3. Ex-Amazon employee Tim Thompson led a team of 40 engineers responsible for the Alexa devices' operating system at Amazon's facility in Austin, Texas. ECF No. 42 Ex. 7[1] ("*Thompson Decl.*") ¶¶ 3-5.

While VoIP's principal place of business is here in Waco, only Chief Financial Officer Kevin Williams works in Waco. ECF No. 26 at 4. VoIP's other current and former c-suite executives live in Canada. *Id.* Moreover, until recently VoIP's principal place of business was in Bellevue, Washington—VoIP moved to Waco in March of 2021, less than one year before it filed this lawsuit. *Id.*

---

[1] Exhibit VOIP 0007 to the Vinod Prasad deposition, also labeled as Exhibit 24 on ECF page 103.

Two Amazon teams in Austin—one managed by Bala Kumar and the other formerly managed by Tim Thompson—have evidence related to the Accused System. *Thompson Decl.* ¶¶ 3-5. In Austin, Tim Thompson formerly led an operating system team that included 40 engineers, and Bala Kumar's Echo Platform Software team includes 13 engineers. *Id.* Another twelve engineers of the Echo Platform Software team are in Sunnyvale, California. *Id.* ██████████████

██████████████████████████████████████████████ ECF No. 42 ("*Prasad Dep.*") 123:19-124:4. ███████████████████████████████████████

███████████████████████████████████████ ECF No. 40 at 4. ██████

██████████████████████████████████ *Id.* at 5-6. ████████████████

████████████████████████████████████████████████████ *Id.*

## II.   LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action might have been brought in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). Answering that question requires a determination of whether the proposed transferee venue is proper. A plaintiff may establish proper venue by showing that the

defendant committed acts of infringement in the district and has a regular and established place of business there. 28 U.S.C. § 1400(b). A defendant has a regular and established place of business in the district if the plaintiff proves that there is a "physical place in the district," that it is a "regular and established place of business," and lastly that it is "the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Additionally, Fifth Circuit courts "should . . . grant" a § 1404(a) motion if the movant can show his proposed forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. The Fifth Circuit further held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (hereinafter "*Volkswagen I*") (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

The burden to prove that a case should be transferred for convenience falls on the moving party. *Volkswagen II*, 545 F.3d at 314. Thus, the movant must demonstrate that the alternative venue is clearly more convenient than the plaintiff's chosen forum. *Id.* at 315. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly

demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id*. at 314–15. While "clearly more convenient" is not necessarily equivalent to the "clear and convincing" evidence standard, the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.   ANALYSIS

**A. VoIP could have brought this suit in the Northern District of California.**

The preliminary question in any transfer analysis under 28 U.S.C. § 1404(a) is whether the plaintiff could have properly brought its lawsuit in the proposed transferee forum. *Volkswagen II*, 545 F. 3d at 312. VoIP certainly could have. Under 28 U.S.C. § 1400(b), one location where venue in a patent lawsuit is proper is where the defendant has committed acts of infringement and maintains a regular and established place of business. Amazon maintains a significant office with many employees in the Northern District of California. VoIP does not dispute that this threshold inquiry is satisfied.

**B. The private interest factors weigh against transfer.**

**a. The relative ease of access to sources of proof is neutral.**

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). The question properly focuses on "*relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). And "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's

documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Here, Amazon argues that "the bulk of the technical sources of proof relevant to the accused technology will be the code and documentation prepared by the technical team in Sunnyvale," California. ECF No. 26 at 8. Twenty-eight Amazon middleware employees, as well as other engineers responsible for designing and developing Amazon Alexa technology, work out of the Sunnyvale location. *Id*; *see also Thompson Decl.* ¶ 7. Amazon argues that these employees can more easily access evidence in the Northern District of California. In particular, Amazon identifies source code as a type of evidence easily accessed by its technical team in Sunnyvale. █████████ ████████████████████████████████████████████ *Thompson Decl.* ¶ 7. The business and financial documents are in Seattle and/or Toronto. ECF No. 26 at 8. Amazon argues that its employees in Sunnyvale can easily access the business and financial documents because its employees in Sunnyvale have access.

VoIP contends that other relevant Amazon documents are scattered across Austin, Toronto, Seattle, and other cities—thus, VoIP argues, this factor weighs against transfer. ECF No. 40 at 5-7. In Austin, Amazon engineers will be able to easily access evidence related to the development of the operating system and platform layer of the accused devices. Those same engineers will also be able to access source code in Seattle as well as electronic business records and financial documents developed by teams in Seattle and Toronto just as easily as engineers in Sunnyvale.

Amazon disputes the relevance of the work by the team in Austin. Tim Thompson declared, "Technical documentation relating to the work of the DeviceOS and Echo Platform Software teams is maintained at the Austin offices." *Thompson Decl.* ¶ 6. "The Device OS team designs and develops the operating system for the Echo and Fire TV products." *Id.* ¶ 3. The platform layer is

"responsible for facilitating communications between the hardware components, such as, for example, wi-fi-chips, and the applications on those devices." *Id.* ¶ 5. Amazon argues that the platform layer deals with control and communication internal to an Alexa device, not a "critical" exchange of information between the device and an external server. But even if the device operating system is not the most "critical" part of infringement, VoIP still has a burden of showing that the operating system implements the more critical middleware functionality to prove its infringement case. Deposition testimony from Vinod Prasad, Amazon's Rule 30(b)(6) witness, establishes that the operating system allows the device's middleware to connect to a WiFi network and place a call:

> Q.    Does the middleware that you developed need to use the operating system to get to the WiFi to place the Voice over WiFi calls?
> A.    Yeah . . . .

*Prasad Dep.* 71:10-13. Thus, the operating system's development is relevant to this case, and the technical documents relating to that operating system are maintained in Austin. *Thompson Decl.* ¶ 6.

When considering both the evidence in Sunnyvale and the evidence in Austin the Court finds that this factor is neutral. The employees who developed the middleware are in the Northern District of California, and the employees who developed the operating system are in Austin. The Court must not only consider the location of Amazon's documents, which are in both districts, but also the location of "document custodians" and "where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Both Austin and Sunnyvale have technical Amazon employees who can access source code. It will be similarly easy for those employees to access the business and

financial records kept electronically in Seattle or Toronto. Thus, neither forum has a clear advantage in ease of document retrieval. Thus, this factor is neutral.

### b. The compulsory process factor slightly favors transfer.

The Federal Rules permit a court to subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316). And "when there is no indication that the witness is willing," the Court must presume that its subpoena power will be necessary to secure the witness' attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (quoting *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue*.*" *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

To support transfer, Amazon points to prior art witnesses located in the Northern District of California that it intends to use to prove invalidity. ECF No. 26 at 9; ECF No. 27 ¶ 9. Amazon identifies specific witnesses from Sylantro Systems in Campbell, California, Altigen Communications in Milpitas, California, and StarVox Communications, Inc. in San Jose, California. ECF No. 26 at 9. Since these witnesses have provided no indication of their willingness

to attend trial, Amazon argues that the Northern District of California's subpoena power will be necessary. ECF No. 26 at 9.

For its part, VoIP points to witnesses in Dallas and Austin that it asserts will require this Court's subpoena power to compel attendance. ECF No. 40 at 12-13. VoIP needs to call Mr. George Burnt of Business Legal Management in Dallas, Mr. Marcus Redding of Intellion Analytics Group in Austin, and Mr. Tim Thompson as a former Amazon engineer who headed the DeviceOS team and now resides in Austin. Like Amazon's witnesses, VoIP's Dallas and Austin witnesses have not indicated a willingness to attend trial. *Id.* VoIP further argues that Amazon's prior art witnesses are speculative at best because Amazon has not served invalidity claim charts and because Amazon "cherry picked" these three prior-art companies out of preliminary contentions that list 19 different systems and 41 different publications. *Id.*; ECF No. 41-13.

Amazon contends that the Court should not count Mr. Redding or Mr. Thompson under this factor. As to Mr. Redding, Amazon argues that he is an expert retained by VoIP. This was true in 2016 and 2018. ECF No. 41 ¶ 32. However, Amazon has not presented evidence that Mr. Redding is still willing to testify in this case in 2022 or that VoIP is continuing to pay him. As to Mr. Thompson, Amazon argues that he is not relevant, but for the reasons explained above, VoIP may need testimony from Mr. Thompson to explain how the middleware that Mr. Prasad developed uses the operating system to get to the WiFi to place the Voice over WiFi calls. *Prasad Dep.* 71:10-13.

The Court finds this factor to slightly favor transfer. Amazon cites five witnesses in its desired forum that require the Northern District of California's compulsory process; VoIP points to three that require this Court's compulsory process. Because the Court presumes witnesses are unwilling unless they indicate otherwise, the Court counts all the witnesses identified by Amazon

as unwilling witnesses. *DISH Network*, 2021 WL 4911981, at \*3. Similarly, the Court deems VoIP's three witnesses to be unwilling. *Id.* There are only two more witnesses who reside in the Northern District of California than the Western District of Texas, a difference that is insufficient to heavily tip the scale when considering that Amazon is statistically unlikely to select those prior art witnesses for trial from among the 60 different references that it contends invalidates the asserted patents. Thus, this factor weighs only slightly in favor of transfer.

### c.   The cost of attendance for willing witnesses factor weighs against transfer.

The most important factor in the transfer analysis is witness convenience. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). When analyzing this factor, the Court should consider all potential materials and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at \*5 (E.D. Tex. Sept. 19, 2017). This factor appropriately considers the cost of attendance of all willing witnesses, including both party and non-party witnesses. *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at \*2–3 (Fed. Cir. Oct. 13, 2021). "Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at \*6 (W.D. Tex. Feb. 2, 2021).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But the Federal Circuit has clarified that courts should not "rigidly" apply the 100-mile rule in cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317).

Rather, "the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, slip op. at 9 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.* Time and distance frequently and naturally overlap because witnesses usually take more time to travel farther away, thereby increasing the time away from home. A witness in Florida would not find it more convenient to travel to Texas than to California despite Texas being halfway between Florida and California. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022).

Amazon has twenty-eight relevant employees who live and work in the Northern District of California. ECF No. 26-1 ¶ 3. Those employees write the middleware code that enables the "Amazon Calling System" VoIP accuses in its complaint. ECF No. 6 at 11 ¶ 29. Thus, Amazon argues, its middleware development employees will "likely be significant fact witnesses" for whom travel to Waco would be "a substantial inconvenience." ECF No. 26.

In response, VoIP points to Amazon employees in Austin as well as other witnesses based in or willing to travel to the Western District of Texas. ECF No. 40 at 9-10. The Amazon employees VoIP highlights comprise Amazon's DeviceOS team, which designs and develops the operating system for Amazon Echo and FireTV products. *Thompson Decl.* ¶¶ 2-4. Additionally, VoIP argues that the location of its headquarters in the Western District of Texas weighs against transfer. *Id.* VoIP also asks the Court to weigh in its favor potential witnesses which do not reside in either the Northern District of California or the Western District of Texas. *Id.*

The Court finds this factor to weigh against transfer. Amazon rightly points out that its twenty-eight middleware engineers are relevant to VoIP's infringement theory and live in the

Northern District of California. ECF No. 26-1 at 1 ¶ 5. But the Alexa middleware is not the only technology relevant to infringement—the middleware's functionality depends on the device's operating system. *Prasad Dep.* 71:10-13. The team that designs and develops that operating system is comprised of forty engineers, "all of whom are located in Austin." *Thompson Decl.* ¶¶ 3-4. Thus, Sunnyvale is not the only location of relevant witnesses—and twelve more Amazon witnesses reside in this District than the Northern District of California. This factor weighs against transfer.

### d. Other practical problems are neutral.

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

The Court finds this factor neutral. VoIP filed seven cases in this District on June 25, 2021, each accusing similar technologies. ECF No. 26 at 1. Two of those cases have since been dismissed. *VoIP-Pal.com, Inc. v. Apple Inc.*, No. 6:21-cv-670; *VoIP-Pal.com, Inc. v. AT&T Corp.*, No. 6:21-cv-671. But the Northern District of California also has experience with these patents: that court presided over five related VoIP cases between 2018 and 2019. ECF No. 27 ("*Kelley Decl.*") at 2 ¶¶ 2-5. Both the transferor and transferee forums are familiar with the parties and technologies at issue. And while the co-pending litigation in this Court would normally weigh

against transfer, each of those cases are also subject to pending motions to transfer. Accordingly, the Court finds this factor neutral.

### C. The public interest factors weigh slightly against transfer.

#### a. The court congestion factor weighs against transfer.

The analysis under this factor asks "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). The Court considers the "speed with which a case can come to trial and be resolved . . . ." *Genentech, Inc.*, 566 F.3d at 1347. However, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Amazon argues that the Northern District of California's lower caseload weighs in favor of transfer to that District. ECF No. 26. Amazon also goes so far as to argue that VoIP's status as a non-practicing entity shows it has no need for a speedy resolution of this case. *Id.* Such an argument is contrary to public policy. VoIP may not have a market share at stake if this lawsuit is slow to resolve, but VoIP is nonetheless entitled to swift vindication of its property rights. The Federal Circuit has long held that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. GMC*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). Congress itself has acknowledged the importance of the "quick" and inexpensive resolution of patent disputes, going so far as to erect a sprawling administrative regime—that does not differentiate between worked and unworked patents—for that purpose. *See, e.g., Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). "Consistent with such

expressions of public policy, the public has an interest in the rapid resolution of patent disputes (without reference to whether the patent is being worked)." *Billjco, LLC v. Apple Inc.*, No. 6:21-CV-00528-ADA, 2022 WL 607890, at *8 n.2 (W.D. Tex. Mar. 1, 2022).

To be sure, this Court's docket is significantly heavier than the Northern District of California's. In rebuttal, VoIP points out this Court's slightly faster median time to trial: 19.1 months, versus 22 months in the Northern District of California. ECF No. 41-25.[2] Because this Court reaches trial faster than the Northern District of California, the Court finds this factor weighs against transfer.

### b.  The local interests are neutral.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). Accordingly, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original).

But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence in the district. *Id.* Moreover, "little or no

---

[2] These Federal Judicial statistics describe times to trial for all civil cases in an entire District. They do not specify the average time to trial for patent cases in a single courthouse.

weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Thus, while the location of VoIP's headquarters in Waco would normally be entitled to at least some weight, the Court gives no weight to its location in this case. VoIP established itself in Waco less than a full year before it filed this lawsuit, and its "headquarters" in Waco is staffed by one employee. ECF No. 48 at 4. VoIP's other C-suite executives, meanwhile, continue to live in Canada. *Id.* Such a connection to Waco is insufficient to weigh against transfer.

The Court finds this factor neutral. Under this factor, the Court looks to the events that give rise to this lawsuit. *Juniper Networks*, 14 F.4th at 1320. Here, the Court properly looks to where Amazon's accused technology was developed. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021), *cert. denied sub nom. Ikorongo Tex. LLC v. Samsung Elecs. Co., Ltd.*, 142 S. Ct. 1445 (2022) (courts must look to where the "research[], design[], and develop[ment]" of accused technology took place). Amazon argues that that development occurred primarily in the Northern District of California, where it developed the middleware for the accused products. ECF No. 48 at 5. But middleware is not the only technical development relevant to this case, and the Device OS team's research, design, and development in Austin under Bala Kumar and (formerly) Tim Thompson must also be accounted for. *Prasad Dep.* 71:10-13; *Thompson Decl.* ¶¶ 3-5. In sum, both the Northern District of California and this District have valid local interests because research, design, and development of accused technology occurred in both districts. Accordingly, the Court finds this factor neutral.

**c.   The familiarity with governing law factor is neutral.**

The parties agree this factor is neutral. Accordingly, the Court finds it neutral.

### d.  The conflict of laws factor is neutral.

The parties agree this factor is neutral. Accordingly, the Court finds it neutral.

## IV.   CONCLUSION

In sum, the balance of the *Volkswagen* factors weighs against transfer. Only the compulsory process factor slightly favors transfer, while the court congestion and convenience of witnesses factors weigh against transfer. The sources of proof, avoidance of practical problems, local interests, governing law, and conflict of laws factors are neutral. For these reasons, Amazon's Motion to Transfer is **DENIED**.

SIGNED this 31st day of May, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE